**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| Joint Municipal Water and Sewer Commission, | |
| Plaintiff, | Case No. 2:25-cv-00711-RMG |
| v. | JURY TRIAL DEMANDED |
| 3M Company, Inc.; | **NOTICE OF REMOVAL** |

Joint Municipal Water and Sewer Commission,

Plaintiff,

v.

3M Company, Inc.;
Ascend Performance Materials, Inc.;
Ascend Performance Materials Operations, LLC;
Burlington Industries, Inc.;
Cintas Corporation No. 2 d/b/a Cintas Cleanroom
Corporation;
CompX, LLC ;
CompX Security Products, Inc.;
Corteva, Inc.;
CPJ Technologies, Inc.;
Daikin America, Inc.;
DayStrong Rubber Products, LLC;
Du Pont de Nemours, Inc.;
E.I. DuPont de Nemours, Inc.;
EIDP, Inc. f/k/a E.I. du Pont de Nemours and Company;
Elevate Textiles, Inc. f/k/a Safety Components
International, Inc. f/k/a International Textile Group, Inc.;
FUJIFILM Holdings America Corporation;
FUJIFILM Manufacturing U.S.A., Inc.;
Jain-Chem, Ltd.;
Masha, LLC;
Milliken & Company;
QualaWash Holdings, LLC;
Roll Technology Corporation f/k/a Carolina Plating
Company;
Safety Components Fabric Technologies, Inc.;
Saint-Gobain Abrasives, Inc.;
Shaw Industries Group, Inc.;
Solvay Specialty Polymers USA, LLC;
T & S Brass & Bronze Works, Inc.;
Teijin Carbon America, Inc.;
The Chemours Company;
The Chemours Company FC, LLC;
Ulterion International, LLC;
Ulterion International Exports II, Inc.;
Unichem Specialty Chemicals, Inc.;
and

Unifirst Corporation,

                    Defendants.

Defendant 3M Company ("3M"), by undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Court of Common Pleas for the Eleventh Judicial Circuit, Lexington County, South Carolina, to the United States District Court for the District of South Carolina, Columbia Division. 3M is entitled to remove this action based on federal officer jurisdiction. As grounds for removal, 3M states as follows.

## PRELIMINARY STATEMENT

1.      Plaintiff Joint Municipal Water And Sewer Commission ("Plaintiff")—the operator of drinking water and wastewater utilities for Lexington County, South Carolina—seeks to hold 3M and certain other Defendants liable based on their alleged conduct in designing, manufacturing, or selling per- and polyfluoroalkyl substances ("PFAS") or PFAS-containing products, purportedly resulting in alleged contamination of Plaintiff's water supply, Lake Murray.

2.      The alleged PFAS contamination of Plaintiff's water supply plausibly resulted at least in part from the use, storage, and/or disposal of PFAS-containing aqueous film-forming foams ("AFFF") that 3M and others developed and sold to the U.S. military in accordance with rigorous military specifications ("MilSpec") issued by the Department of Defense ("DoD"). AFFF is a firefighting foam that is highly effective for extinguishing fuel-based fires. Here, the alleged PFAS contamination of Lake Murray plausibly resulted at least in part from nearby use of MilSpec

2

AFFF, including at military facilities such as the Army Aviation Support Facility Upstate ("AASF Upstate") in Greenville South Carolina, and at certain airports including the Columbia Metropolitan Airport in West Columbia, South Carolina. In fact, the State of South Carolina has filed an action against 3M and other Defendants to recover for alleged PFAS contamination of groundwater and surface waters encompassing Plaintiff's water supply, and the State expressly alleges that such PFAS resulted from AFFF used at military facilities. The State's case is pending in the *In re AFFF Products Liability Litigation* MDL ("MDL") before Judge Gergel in this District. *See* Compl., *South Carolina v. 3M Co., et al.*, No. 2:23-cv-05734-RMG (D.S.C.), ECF No. 1-1 ("State AG Complaint"). Because the alleged PFAS contamination of Plaintiff's water supply plausibly resulted from the use, storage, and/or disposal of MilSpec AFFF, 3M intends to assert in this action the federal government contractor defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), which bars Plaintiff from establishing, among other things, liability for the design and manufacture of MilSpec AFFF and for the provision of warnings for the product.

3.      Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action to have its federal defense adjudicated in a federal forum. Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008). Courts have held that AFFF manufacturers properly removed cases to federal court on the ground that the plaintiffs' claims plausibly arose at least in part from MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard*, No. 1:20-cv-1080, 2021 WL 744683, at *3-4 (W.D. Mich. Jan. 6, 2021).

4.      Although Plaintiff's Complaint purports to disclaim any damages arising from contamination or injury related to AFFF, Plaintiff's requests for relief encompass damages

3

attributable to PFAS-containing MilSpec AFFF. PFAS from MilSpec AFFF use plausibly has

commingled with alleged PFAS from non-AFFF sources in the drinking water and wastewater for

which Plaintiff seeks to recover.[1] Moreover, PFAS from MilSpec AFFF is identical to PFAS from

other sources, and Plaintiff has not explained how to segregate out the PFAS covered by its

disclaimer. Plaintiff cannot prevent 3M "from raising the production of MilSpec AFFF as a defense

or an alternate theory" of the claimed damages. *Nessel*, 2021 WL 744683, at *3. As a result, 3M

is entitled to a federal forum to litigate its federal defense.[2]

## BACKGROUND

5.    Plaintiff filed this action on January 8, 2025, in the Court of Common Pleas for the

Eleventh Judicial Circuit, Lexington County, South Carolina, bearing Case No. 2025CP3200097.

On the same day, Plaintiff filed the operative Amended Complaint ("Complaint") (attached as

Exhibit 1).

6.    The Complaint alleges that Plaintiff operates a water and sewer utility for

Lexington County. Complaint ¶ 5. The Complaint further alleges that Plaintiff provides drinking

water to customers in Lexington County; that Plaintiff purchases drinking water from a treatment

plant that draws water from Lake Murray; and that Plaintiff is constructing a new water treatment

---

[1] The South Carolina Department of Health and Environmental Control has classified AFFF use at DoD and other federal facilities as having the highest "Impact Rank" of all potential sources of PFAS in surface waters in South Carolina. *See* SCDHEC, *Strategy to Assess the Impact of Polyfluoroalkyl Substances on Ambient Surface Waters in South Carolina* at 7 (Apr. 30, 2021), https://scdhec.gov/sites/default/files/media/document/BOW_PFAS_SurfaceWaterStrategy_0.pdf.

[2] 3M acknowledges that the MDL Court remanded the State's putative "non-AFFF" action to state court on the ground that the State had disclaimed AFFF-related damages and federal officer jurisdiction was lacking. Order, *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-2873, 2024 WL 1470056 (D.S.C. Feb. 29, 2024). That order is inconsistent with subsequent appellate court precedent, and 3M is challenging it in its appeal to the Fourth Circuit, docketed as *In re AFFF Prods. Liab. Litig.*, No. 24-1270 (4th Cir.).

plant that will also draw water from Lake Murray. *See id.* ¶¶ 2-3, 12, 15-20. Lake Murray is a reservoir fed by the Saluda River. *See id.* ¶ 3.

7.     The Complaint also alleges that Plaintiff is responsible for wastewater treatment, and relies on the City of Cayce, South Carolina, to treat its wastewater. *See id.* ¶¶ 13, 21-22.

8.     Plaintiff alleges that it brought this action to recover costs and obtain other relief relating to alleged contamination of its drinking water supply and wastewater with PFAS. *See* Complaint, p. 2. Plaintiff asserts that Lake Murray has PFAS levels in excess of recent EPA regulatory limits for drinking water; that Plaintiff must bring its water into compliance with those limits; and that it will incur costs related to removal of PFAS from its water and wastewater. *See id.* ¶¶ 1-14, 113-126. Plaintiff seeks compensatory and punitive damages, specifically including costs of upgrading water and wastewater treatment technologies and other expenses for PFAS removal. *See id.* ¶ 25.

9.     Plaintiff asserts that the PFAS for which it seeks to recover include PFOA and PFOS, chemicals that degrade to PFOA and PFOS, and chemical precursors of PFOA and PFOS. *See* Complaint ¶ 1 n.1.  PFOA and PFOS are PFAS chemicals that have been used in manufacturing AFFF products, including MilSpec AFFF. *See* State AG Complaint ¶ 2.

10.     Plaintiff asserts claims against both "PFAS Manufacturers" (including 3M and certain other Defendants) and "PFAS Users" (including manufacturers that operated local or nearby facilities). *See* Complaint ¶¶ 28-57. Plaintiff generically alleges that Defendants "manufactured, sold, used, and/or caused the unauthorized discharge of PFAS into Lake Murray, from which [Plaintiff] currently sources its drinking water and proposes to draw water from when its new drinking water plant comes online." *Id*. ¶ 5.

11.     Plaintiff alleges that it disclaims any damages from AFFF. *See id.* ¶ 60.

5

12.    Plaintiff asserts claims for negligence/gross negligence (*id.*, ¶¶ 127-140), continuing nuisance (*id.*, ¶¶ 141-152), public nuisance (*id.*, ¶¶ 153-162), trespass (*id.*, ¶¶ 163-175); failure to warn (*id.*, ¶¶ 176-184); and violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 *et seq.* (*id.*, ¶¶ 185-193).

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE MET

13.    Venue for the removal of this action is proper in this Court pursuant to 28 U.S.C. §§ 121(2) and 1441(a) because the Court of Common Pleas for the Eleventh Judicial Circuit, Lexington County, South Carolina, is located within the District of South Carolina, Columbia Division. This action is related to cases in the MDL that are pending in this District, which include cases against 3M and other Defendants for alleged PFAS contamination in South Carolina.

14.    3M is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1). *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Houser v. Ammco Tools, a/k/a Hennessy Indus., Inc.*, Civil Action No. RDB-13-1179, 2013 WL 3364377, at *1 n.5 (D. Md. July 2, 2013).

15.    Pursuant to 28 U.S.C. § 1446(a), true and accurate copies of the operative Complaint and Summons are attached hereto as Exhibit 1. True and accurate copies of all other documents on file in the state-court proceeding are attached hereto as Exhibit 2.

16.    3M was served with the Complaint and Summons on January 13, 2025. This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b).

17.    Pursuant to 28 U.S.C. § 1446(d), 3M is serving a copy of this Notice of Removal upon all other parties to this case and is filing a copy with the Clerk of the Court of Common Pleas for the Eleventh Judicial Circuit, Lexington County, South Carolina.

18.    By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

19.    3M reserves the right to amend or supplement this Notice of Removal.

20.    If any question arises as to the propriety of the removal of this action, 3M requests the opportunity to present a brief and oral argument in support of removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

21.    Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its actions taken pursuant to a federal officer's direction have a causal nexus with plaintiff's claims or injuries or are otherwise related to the lawsuit; and (d) it can assert a "colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 133-35 (1989); *see also Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 254 (4th Cir. 2021); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135.

22.    Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum

for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). To the contrary, § 1442 as a whole must be "liberally construed" in favor of removal. *Cnty Bd. of Arlington Cnty.*, 996 F.3d at 251; *see Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Durham*, 445 F.3d at 1252.

23.    All requirements for removal under § 1442(a)(1) are satisfied when, as here, the notice of removal alleges that the plaintiff's injuries are, at least in part, caused by or related to MilSpec AFFF, regardless of whether the plaintiff has purported to disclaim MilSpec AFFF-related injuries. *See, e.g.*, *Nessel*, 2021 WL 744683, at *3 (denying motion to remand in PFAS case because, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF, . . . Plaintiffs cannot decide what defense Defendants might present"). Federal courts have found that removal under § 1442 is proper when the complaint seeks damages for alleged PFAS-related injuries from MilSpec AFFF. *See, e.g.*, *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-2873, 2019 WL 2807266, at *2-3 (D.S.C. May 24, 2019) ("*In re AFFF*"); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018).

24.    Here, the alleged PFAS from non-AFFF sources plausibly commingled in Plaintiff's water supply with PFAS from MilSpec AFFF, and as a result, Plaintiff's claims for damages and other relief related to PFAS in its water supply relate to a single injury attributable at least in part to MilSpec AFFF. To the extent that alleged PFAS deriving from non-AFFF sources cannot actually be separated out from PFAS deriving from the MilSpec AFFF sources, Plaintiff necessarily is seeking to impose liability on 3M for alleged contamination attributable in part to

MilSpec AFFF, despite its alleged disclaimer. Moreover, 3M is entitled to a federal forum to litigate any apportionment of Plaintiff's damages between PFAS from non-AFFF sources and PFAS from AFFF sources, as the Seventh Circuit recently held in another case for alleged PFAS contamination in which the plaintiff similarly purported to disclaim injury from AFFF. *See People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 849 (7th Cir. 2024) (holding that "a federal court should be the one to resolve" difficult questions of apportionment of PFAS-related injuries between non-AFFF sources and AFFF sources subject to a federal defense, and ordering remand *only* because the plaintiff conceded that pursuant to its alleged disclaimer, it would not seek recovery for "mixed PFAS contamination" so its "recovery is barred" "[i]f even a morsel of contamination" is from AFFF). This case has been properly removed to this Court based on federal officer jurisdiction.

A.    **MilSpec AFFF**

25.    In the late 1960s/early 1970s, the U.S. military began using MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the U.S. Naval Research Laboratory developed AFFF (with some assistance from industry participants), and its researchers were granted the first AFFF patent in 1966.[3] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[4]

26.    The design, manufacture, and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command, part of the DoD.

---

[3] U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[4] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[5] All MilSpec AFFF products must be "qualified for listing on the applicable Qualified Products List" prior to military procurement.[6] Prior to such listing, "a manufacturer's . . . products are examined, tested, and approved to be in conformance with specification requirements."[7] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[8] Naval Sea Systems Command "reserves the right to perform any of the [quality assurance] inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements."[9]

27.     From its inception until recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants"—the class of PFAS chemicals that includes PFOA and PFOS.[10] Even today, the AFFF MilSpec expressly contemplates the presence of PFOA

---

[5] The 1969 MilSpec and all its revisions and amendments through the April 2020 amendment (MIL-PRF-24385F(4)) are available at https://tinyurl.com/yxwotjpg.

[6] MIL-PRF-24385F(4) § 3.1 (2020).

[7] DoD, SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[8] DoD, SD-6, *supra* note 7, at 1.

[9] *See, e.g.*, MIL-PRF-24385F(4) § 4.1 (2020).

[10] *See* Mil-F-24385 § 3.2 (1969); MIL-PRF-24385F(2) § 3.2 (2017). In May 2019, the MilSpec was revised to drop the explicit requirement that the surfactants in the product be "fluorocarbon." *See* MIL-PRF-24385F(3) § 3.2 (2019). But under current technology, the only AFFF products capable of meeting the MilSpec's stringent performance requirements—and the only ones listed on the military's Qualified Product List—are those containing fluorocarbon surfactants. Thus, as a practical matter, the MilSpec still requires fluorocarbon surfactants.

and PFOS (subject to recently imposed limits) in AFFF formulations.[11] Indeed, the AFFF MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS from AFFF "while still meeting all other military specification requirements."[12]

28.    3M manufactured and sold PFAS-containing MilSpec AFFF to the U.S. military for over three decades pursuant to contracts with the United States. One or more of 3M's AFFF products were on the Navy's Qualified Products List for MilSpec AFFF from 1970 until 2010 (even though 3M had phased out production of AFFF beginning in 2000).[13] The U.S. military continued using MilSpec AFFF products in its possession even after 2010. Over time, the U.S. military used MilSpec AFFF manufactured by 3M throughout the United States, including in South Carolina.

29.    3M also historically manufactured and sold PFAS-containing MilSpec AFFF to non-military users, including in South Carolina. As one notable example, so-called "Part 139" airports—*i.e.*, certain large civilian airports (*see* 14 C.F.R. § 139.1 (2019))—historically have used MilSpec AFFF, including 3M's MilSpec AFFF products. In fact, by 2006, the U.S. government was requiring Part 139 airports to use AFFF meeting MilSpec standards.[14]

30.    The PFAS chemicals that allegedly are contaminating Plaintiff's drinking water supply plausibly have derived at least in part from the use, storage, and/or disposal of MilSpec

---

[11] *See* MIL-PRF-24385F(4) § 6.6 & Tables 1, 3 (2020).

[12] *See* MIL-PRF-24385F(4) § 6.6.

[13] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014) & MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1969-24 (D.S.C.)).

[14] *See* FAA Part 139 CertAlert 06-02, Aqueous Film Forming Foam (AFFF) meeting MIL-F-24385 (Feb. 8, 2006) (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1971-14 (D.S.C.)).

AFFF at military facilities and elsewhere. Accordingly, Plaintiff's claims to recover for the alleged PFAS contamination of its water and wastewater are related to or arise in part from MilSpec AFFF.

31.     Specifically, PFAS from the use, storage, and/or disposal of MilSpec AFFF at AASF Upstate in Greenville, South Carolina, plausibly has contributed to the alleged PFAS contamination of Plaintiff's drinking water supply, Lake Murray. AASF Upstate is located upgradient of Lake Murray where Plaintiff draws its drinking water, and AFFF releases at AASF Upstate plausibly would be a source of PFAS in Plaintiff's drinking water supply. Further, AASF Upstate is a confirmed site where the U.S. military has used and stored AFFF. *See* AECOM, *FINAL Site Inspection Report, Army Aviation Support Facility Upstate* at 2-3 to 2-4 (August 2023), https://www.nationalguard.mil/Leadership/Joint-Staff/Personal-Staff/Public-Affairs/Community-Engagement/Environmental/PFAS-Library/South-Carolina/FileId/341921/. Elevated PFAS levels reportedly were detected in groundwater at and/or around locations at the facility where AFFF was used. *See id.* at 6-2 to 6-4. Moreover, the PFAS investigation for AASF Upstate identified evidence that PFAS from AFFF plausibly migrated off-site and thus may have impacted Plaintiff's water supply. Multiple pathways were identified whereby PFAS plausibly migrated off-site including to the Reedy River, a tributary of the Saluda River, which flows to Lake Murray where Plaintiff draws its water supply. *See id.* at 2-2 (explaining that AASF Upstate is located in the Brushy Creek-Reedy River watershed and that drainage systems carry water to Marrow Bone Creek which is connected to the Reedy River); *id.* at 7-2 (explaining that PFAS may have migrated *via* soil and groundwater to a pond connected to Marrow Bone Creek and from there to the Reedy River).

32.     In addition, AFFF is known to have been used at other sites immediately adjacent to AASF Upstate in Greenville, South Carolina. Those include an aircraft manufacturing facility operated by Lockheed Martin Corporation, which plausibly further contributed to PFAS in

Plaintiff's water supply. In fact, 3M's historical sales records include sales of MilSpec AFFF that were delivered to the Greenville, South Carolina address where the Lockheed Martin facility is located. AASF Upstate is also adjacent to a "Part 139" airport, Donaldson Field Airport.[15] As noted above, MilSpec AFFF historically has been used at Part 139 airports, and Donaldson Field Airport has supported some military operations in addition to commercial operations.

33.    MilSpec AFFF sources of PFAS in Plaintiff's water are not necessarily limited to AASF Upstate and neighboring sites. MilSpec AFFF use at other sites near Plaintiff's water source also potentially contributed to the alleged PFAS contamination—including the Columbia Metropolitan Airport in West Columbia, South Carolina. Columbia Metropolitan Airport is a "Part 139" airport.[16] 3M's sales records show that it sold MilSpec AFFF directly to the Columbia Metropolitan Airport. The airport is located only about eight miles from Lake Murray.[17]

34.    Once PFAS from AFFF has migrated from military bases and/or other AFFF sites to surrounding groundwater and surface water, the PFAS would commingle with and becomes indistinguishable from PFAS from any non-AFFF sources. Tellingly, Plaintiff's own Complaint alleges that PFAS "migrate through surface water and groundwater" and "travel long distances while causing extensive contamination." Complaint ¶ 70; *see id.* ¶ 171. As discussed above, PFAS

---

[15] *See* Part 139 Airport Certification Status List (Excel file), *available at* https://www.faa.gov/airports/airport_safety/part139_cert/part_139_airport_certification_status_list.

[16] *See* Part 139 Airport Certification Status List (Excel file), cited at note 15, *supra*.

[17] The State of South Carolina's own AFFF lawsuit pending in the MDL expressly alleges that AFFF was used at the Columbia Metropolitan Airport and that PFAS from AFFF use there purportedly has contaminated groundwater and surface waters around that site. *See* State AG Complaint ¶ 142 ("AFFF chemicals have appeared in testing and contaminate the surface waters, groundwater, wetlands, soil, and natural resources at and around specific sites, including but not limited to . . . Columbia Metropolitan Airport."). The State's submissions in the MDL also have put AASF Upstate at issue in that litigation (among other sites in and around Greenville).

from MilSpec AFFF plausibly has commingled with PFAS from non-AFFF sources in Plaintiff's water supply, Lake Murray, so that Plaintiff's effort to recover for *any* PFAS levels in its water supply provides a basis for 3M to assert its federal government contractor defense.

35.     Because the alleged PFAS contamination at issue in this action is, at least in part, plausibly attributable and/or related to MilSpec AFFF use at military facilities and elsewhere that has inseparably commingled in the water supply with PFAS from non-AFFF sources, 3M is entitled to remove this case as a whole pursuant to federal officer jurisdiction. That is because Plaintiff's claims for alleged PFAS necessarily relate to PFAS deriving at least in part from MilSpec AFFF sources, *i.e.*, "[i]t is entirely possible that Plaintiff['s] injuries occurred from actions taken while Defendants were acting under color of federal office: namely, MilSpec AFFF." *Nessel*, 2021 WL 744683, at *3. 3M therefore is entitled to raise "the production of MilSpec AFFF as a defense or alternative theory," and on that basis, may remove this case. *Id*. Although the Complaint purports to allege that Plaintiff is not seeking any relief for PFAS contamination from AFFF (*see* Complaint ¶ 60), Plaintiff's claims nonetheless relate to alleged PFAS contamination that is, at least in part, plausibly caused by or related to MilSpec AFFF (and not just non-AFFF PFAS sources). Plaintiffs' disclaimer thus does not preclude removal of this case. *See Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 180 (1st Cir. 2024) (holding that defendant properly removed case under the federal officer removal statute, notwithstanding the plaintiff's alleged disclaimer of relief related to federal conduct, because "[t]o credit the disclaimer would permit [plaintiff] to recover based on what, when considered through [defendant's] theory of removal, were acts under a federal officer," and plaintiff's "attempts at artful pleading cannot serve as an end run around the federal officer removal statute"). Federal officer removal is proper despite the alleged disclaimer because the claimed injury from PFAS is plausibly due in part to PFAS from

MilSpec AFFF—and at a minimum, 3M is entitled to litigate any apportionment of Plaintiff's injury between PFAS from MilSpec AFFF sources and PFAS from other sources in federal court. *See Raoul*, 111 F.4th at 849 ("If the contamination came from AFFF, then the government contractor defense could apply . . . even though the State's complaint expressly excluded 3M from liability for PFAS contamination sources from AFFF" because "a factfinder would need to apportion the contamination" between AFFF and non-AFFF PFAS sources); *Nessel*, 2021 WL 744683, at *3 (denying State of Michigan's motion to remand and concluding that federal officer removal was proper notwithstanding the complaint's allegation that Michigan was not seeking relief for MilSpec AFFF; "Plaintiffs' artful pleading does not obviate the facts on the ground.").

### B.    All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied

#### 1.    The "Person" Requirement Is Satisfied

36.    The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) meets the definition of "person" under the statute. For purposes of § 1442(a)(1), the term "person" includes corporations. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *accord Isaacson*, 517 F.3d at 135-36.

#### 2.    The "Acting Under" Requirement Is Satisfied

37.    The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 152 (2007); *Papp*, 842 F.3d at 812. The phrase "acting under" is to be "liberally construed in favor of the entity seeking removal." *Sawyer*, 860 F.3d at 255 (internal quotation marks omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. Rather, "courts have unhesitatingly treated the

'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer*, 860 F.3d at 255.

38. The requirement of "acting under" a federal officer is met here because the alleged PFAS contamination at issue in this action stems in part from MilSpec AFFF, a vital product provided by 3M that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[18] Accordingly, the military has long depended upon outside contractors like 3M to develop and supply AFFF.

39. In designing, manufacturing, and supplying the MilSpec AFFF at issue, 3M acted under the direction and control of federal officers. Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, MilSpec AFFF products were subject to various tests by the U.S. Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[19]

---

[18] Fulfilling the Roosevelts' Vision at 37.

[19] *See* DoD, SD-6, *supra* note 7, at 1.

40.     For these reasons, 3M has satisfied the "acting under" requirement. *See In re AFFF*, 2019 WL 2807266, at *2 (finding that "acting under" requirement was satisfied because defendant demonstrated that it manufactured MilSpec AFFF under guidance of U.S. military); *Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8-9 (same).

### 3.     The "Under Color Of Federal Office" Requirement Is Satisfied

41.     The third requirement, that the defendant's actions were taken "under color of federal office," requires a "nexus" between plaintiff's claims and the defendant's acts undertaken at the direction of a federal officer. As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137. To meet this requirement, "there need be only *a connection or association* between the act in question and the federal office." *Sawyer*, 860 F.3d at 258 (internal quotation marks omitted) (explaining that 28 U.S.C. § 1442 permits removal of actions "for *or relating to* any act under color of [federal] office"); *Papp*, 842 F.3d at 813; *Isaacson*, 517 F.3d at 137-38 (explaining that it is sufficient if the act that allegedly caused the plaintiff's injuries occurred while the defendant was performing its official duties).[20]

42.     Here, Plaintiff's claims against 3M for alleged PFAS contamination of its water and wastewater are for or relate to (at least in part) 3M's design, manufacture, and sale of MilSpec AFFF. MilSpec AFFF was designed and manufactured according to DoD military specifications; has been used, stored, and/or released at military facilities and elsewhere in the vicinity of Plaintiff's water supply; and has plausibly impacted PFAS levels of Plaintiff's water supply. As a result, Plaintiff's claims against 3M relate to its acts taken under color of federal office. *See In re*

---

[20] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

*AFFF*, 2019 WL 2807266, at *3 (nexus element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products . . . for which the U.S. military imposes MilSpec standards."); *Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government.").

43.     Courts "credit Defendants' theory of the case" when determining whether the requisite nexus exists. *Isaacson*, 517 F.3d at 137; *see Express Scripts, Inc.*, 119 F.4th at 192; *Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present"). As averred in this Notice of Removal, Plaintiff's alleged injuries plausibly arise at least in part from MilSpec AFFF. Plaintiff's claims thus sufficiently relate to 3M's actions under color of federal office. "[I]t is enough for . . . removal that at least some of the pollution arose from the federal acts." *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020)).

### 4.     The *"Colorable Federal Defense" Requirement Is Satisfied*

44.     The fourth requirement ("colorable federal defense") is satisfied by 3M's assertion of the government contractor defense.

45.     At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2

(E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)). Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (quoting *Willingham*, 395 U.S. at 409).

46.     Under the government contractor defense, the defendant is not liable for the design or manufacture of equipment or supplies (or for warnings relating to them) "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

47.     The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling.[21] Those specifications are

---

[21] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 5, *supra*.

19

"reasonably precise," including in requiring the use of PFAS.[22] In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *See In re AFFF*, 2019 WL 2807266, at *3 (noting that a colorable defense was alleged where AFFF MilSpec "included specifications for the chemical class that includes PFOS/PFOA"); *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

48.     With respect to the second requirement, 3M's products have appeared on the DoD Qualified Products List,[23] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See In re AFFF*, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); *Ayo*, 2018 WL 4781145, at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications.").

49.     Regarding the third requirement, the U.S. government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.

---

[22] As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family. Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification.

[23] *See* QPL/QPD Histories, cited in note 13, *supra*.

Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[24] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[25] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[26] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."[27] In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.[28] More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, the DoD still described AFFF containing PFOS or PFOA

---

[24] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perflurooctanoic Acid and Its Salts* 1-6 (Nov. 4, 2002).

[25] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[26] USAF, *Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas* 2 (June 14, 1991).

[27] EPA Presentation on Activities/Issues on Fluorosurfactants, March 16, 2001 (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1971-2 (D.S.C.)).

[28] *See* EPA, *Revised Draft Hazard Assessment*, *supra* note 24.

as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[29] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants,"[30] and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[31] *See In re AFFF*, 2019 WL 2807266, at *3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . ."); *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

50.    At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal

---

[29] DoD, *Aqueous Film Forming Foam Report to Congress* 1-2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[30] MIL-PRF-24385F(4) § 3.2 (2020).

[31] MIL-PRF-24385F(4) § 6.6 & Tables I, III; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89-90; *see also Ayo*, 2018 WL 4781145, at *13.

51.     In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by 3M presents genuine issues of fact for trial. *See In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is, by definition, better than merely "colorable."

52.     3M's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on 3M for alleged injuries to Plaintiff that were caused in whole or in part by 3M's compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

53.     Accordingly, 3M is entitled to remove this action to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

* * * * *

WHEREFORE, 3M hereby removes this action from the Court of Common Pleas for the Eleventh Judicial Circuit, Lexington County, South Carolina, to the United States District Court for the District of South Carolina, Columbia Division.

Respectfully submitted,

February 7, 2025

s/Brian C. Duffy
Brian C. Duffy (Fed ID No. 9491)
DUFFY & YOUNG, LLC
96 Broad Street
Charleston, SC 29401
(843) 720-2044
(843) 720-2047
bduffy@duffyandyoung.com
*Liaison Counsel for Defendant 3M Company*

Daniel L. Ring, Esq.
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 701-8520
dring@mayerbrown.com
*Counsel for Defendant 3M Company*

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record. I further certify that I caused a true and correct copy of the foregoing document to be served upon the following parties by First Class Mail and/or by Email, as indicated below:

**By Mail and Email:**

Amy L.B. Hill, SC Bar No.: 68541
William C. Lewis, SC Bar No.: 101287
Richardson Thomas, LLC
1513 Hampton Street
Columbia, South Carolina 29201
amy@richardsonthomas.com
will@richardsonthomas.com

Jeffrey E. Friedman
Jeffrey E. (Jay) Friedman, Jr.
Matthew D. Conn
Madison M. Gitschier
Friedman, Dazzio & Zulanas, P.C.
3800 Corporate Woods Drive
Birmingham, AL 35242
jfriedman@friedman-lawyers.com
jayfriedman@friedman-lawyers.com
mconn@friedman-lawyers.com
mgitschier@friedman-lawyers.com

*Counsel for Plaintiff*

**By Email:**

Theodore M Grossman
Jones Day
250 Vesey Street
New York, NY 10281-1047
Email: tgrossman@jonesday.com

*Counsel for Daikin America Inc.*

David R. Erickson
Shook, Hardy & Bacon LLP
2555 Grand Boulevard
Kansas City, MO 64108
derickson@shb.com

*Counsel for Defendants E.I. Du Pont de Nemours and Company; EIDP, Inc. f/k/a E.I. Du Pont de Nemours and Company; The Chemours Company; and the Chemours Company FC, LLC*

Katherine L.I. Hacker
Bartlit Beck LLP
1801 Wewatta St., 12th Floor
Denver, CO 80202
kat.hacker@bartlitbeck.com

*Counsel for Defendant DuPont de Nemours, Inc., and Corteva, Inc.*

Barbara J Wagner
Morris Dawes Cooke , Jr
Barnwell Whaley Patterson and Helms (Cha)
PO Drawer H
211 King Street
Suite 300
Charleston, SC 29402
Email: bwagner@barnwell-whaley.com
Email: mdc@barnwell-whaley.com

*Counsel for Defendant Milliken & Company*

Theodore V. Wells, Jr.
Paul, Wiess, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Email: twells@paulweiss.com

*Counsel for Defendant Solvay Specialty Polymers USA, LLC*

Andre Hunter , Jr
Jonathan B Blakley
Jessica Gutierrez
Gordon Rees Scully Mansukhani (Chi IL)
1 N Franklin Street
Suite 800
Chicago, IL 60606
Email: aahunter@grsm.com

Email: jblakley@grsm.com
Email: jxgutierrez@grsm.com

*Counsel for Defendant Safety Components Fabric Technologies, Inc.*

**By Mail:**

Peter M. McCoy, Jr.
15 Prioleau Street
Charleston, SC 29401

*Counsel for Defendant Burlington Industries, Inc.*

Deborah B. Barbier
1811 Pickens Street
Columbia, SC 29201

*Counsel for DayStrong Rubber Products, LLC*

Ascend Performance Materials, Inc.
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

*Defendant*

Ascend Performance Materials Operations, LLC
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

*Defendant*

Cintas Corporation No. 2 d/b/a Cintas Cleanroom Corporation
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

*Defendant*

Comp X, LLC
6650 Rivers Avenue STE 100
North Charleston, SC 29406

*Defendant*

CompX Security Products, Inc.
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

*Defendant*

CPJ Technologies, Inc.
200 Tanner Drive
Taylors, South Carolina 29687

*Defendant*

Jan-Chem, Ltd.
200 Tanner Drive
Taylors, South Carolina 29687

*Defendant*

Ulterion International, LLC
200 Tanner Drive
Taylors, South Carolina 29687

*Defendant*

Ulterion International Exports, II, Inc.
200 Tanner Drive
Taylors, South Carolina 29687

*Defendant*

Masha, LLC
200 Tanner Drive
Taylors, South Carolina 29687

*Defendant*

Elevate Textiles, Inc.
f/k/a Safety Components International, Inc.
f/k/a International Textile Group, Inc.
c/o CT Corporation System
2 Office Park Court, Suite 103
Columbia, SC 29223

*Defendant*

4

FUJIFILM Holdings America Corporation
c/o Corporation Service Co.
508 Meeting Street
West Columbia, SC 29169

*Defendant*

FUJIFILM Manufacturing U.S.A., Inc.
c/o Corporation Service Co.
508 Meeting Street
West Columbia, SC 29169

*Defendant*

QualaWash Holdings, LLC
c/o Corporation Service Co.
508 Meeting Street
West Columbia, SC 29169

*Defendant*

Roll Technology Corporation f/k/a
Carolina Plating Company, Inc.
4412 Whitehorse Road
Greenville, South Carolina 29611

*Defendant*

Shaw Industries Group, Inc.
c/o Corporation Service Co.
508 Meeting Street
West Columbia, SC 29169

*Defendant*

Saint-Gobain Abrasives, Inc.
c/o CT Corporation System
2 Office Park Court, Suite 103
Columbia, SC 29223

*Defendant*

5

T & S Brass and Bronze Works, Inc.
c/o Claude I. Theisen
RT 4 Old Buncombe Rd.
Travelers Rest, SC 29690

*Defendant*

Teijin Carbon America, Inc.
c/o Corporation Service Co.
508 Meeting Street
West Columbia, SC 29169

*Defendant*

Unichem Specialty Chemicals, LLC
c/o Corporation Service Co.
508 Meeting Street
West Columbia, SC 29169

*Defendant*

Unifirst Corporation
c/o Prentice Hall Corp.
508 Meeting Street
West Columbia, SC 29169

*Defendant*

s/ Brian C. Duffy
DUFFY & YOUNG, LLC